THE A. WESTMAN MERCANTILE COMPANY, APPELLANT,
v. PARK, APPELLEE.

1. CONSIGNMENT—BILL OF LADING.
Ordinarily, the consignor's ownership in goods ceases upon the shipment and transmission of a bill of lading, unless under special circumstances the right of stoppage in transitu is resorted to, and if the property is lost, the burden falls upon the consignee.
2. PRACTICE—INSTRUCTIONS.
It is not error to refuse to submit to the jury a question upon which there is no evidence.

*Appeal from the District Court of Weld County.*
VOL. II—35

THE appellant was an incorporated company doing business in the city of Denver, and as incident to its business was dealing in hay. In May, 1890, appellee entered into a contract with appellant by which he was to sell and ship to appellant an indefinite amount of hay during the season, being all appellee saw fit to ship at $12 per ton for a certain kind of hay known as 2d bottom hay. Park resided at Evans, Weld county. After entering into the contract and from its date up to June 12th, various lots of hay were shipped, received and satisfactorily accounted for. On June 11th appellee shipped two cars of hay, some 36,000 lbs., to appellant, taking a bill or bills of lading. The cars arrived in Denver on the morning of June 12th; were switched on to a track in the yard of the Union Pacific Railway Co., somewhere in the vicinity of appellant's warehouse about the middle of the day, Sunday, June 15th. In the afternoon or evening of the same day a fire occurred in which appellant's warehouse was burned and some twelve cars of freight on the tracks in the vicinity, among which were five cars of hay consigned to appellant, including the two cars of appellee in controversy. After the burning there was an interview between the parties, in which it was agreed by appellee that appellant should present the claim of loss to the railway company as of its own property. This was by consent of appellee. The presentation was made and was evidently unsuccessful; proceedings of some kind appear to have been had against the railway company, but what they were, or the result, does not appear, only inferentially. After those proceedings, appellant refusing to pay for the hay, this suit was brought, tried to a jury, resulting in a verdict and judgment for appellee for $220. Appellant contends that there was no delivery of the hay to it; that the tracks upon which the cars were burned, though in the immediate vicinity of the warehouse and in the yard, were not the tracks upon which they received cars; that it had had no notice of the shipment or arrival of the cars from either Park or the railway company; that there had been by them no examination of the hay, and

that, in their method of doing business, there was no change of ownership until examination and special acceptance.

Mr. H. N. HAYNES, for appellant.

Mr. H. E. CHURCHILL, for appellee.

REED, J., after stating the facts, delivered the opinion of the court.

In regard to the shipment by Park, the character and the value of the hay, the time of its arrival in Denver and the switching and delivery of the cars on a track in the immediate vicinity of the warehouse, and an intended delivery by the railway to appellant, there is no controversy. The contract, as testified to by Mr. Ballard, manager of appellant, appears to have been by letter addressed to Park in the early days of June, accepted by him and acted upon by the parties. " I wrote plaintiff we could pay him $12 per ton on track in Denver or *on our track in Denver* for A No. 1, Second bottom hay." He does not say whether the words used were " on track in Denver " or " on our track in Denver." That he used the former is fairly to be presumed, because, first, it is commercial language ; second, the putting it upon the special track was something that appellee could not control nor contract in regard to, and this view is fully sustained by his subsequent testimony, where he says: " *The term, on track in Denver means, under an arrangement of the railroad, on the track of consignee.*" It being under a contract with the railroad for switching and delivery, and not by virtue of the contract with Park, it was not contemplated or embraced in the contract. All that could have been understood was the ordinary significance of the words, the hay was to be hauled to Denver and delivered on a track at the expense of the shipper—that the place of delivery was to be Denver and not Evans. The delivery of the hay was complete as far as any duty to be performed by appellee, when the cars were left in

the general receiving yard of the railroad. It is ably urged, and many authorities are cited, that the railroad company was the agent of appellee for the delivery of the hay, consequently, he was responsible for any delinquency. The doctrine is too broadly stated, and involves two distinct propositions that should be separated, viz., the agency of the railroad company, and when the title to the hay passed. The general rule is that the common carrier is the agent of either or both, and might be made responsible to either, depending upon the circumstances of the case.

The question of ownership of the goods is another and distinct question. Ordinarily, the ownership of the goods in the shipper ceases upon the shipment and transmission of the bill of lading, unless under special circumstances the right of stoppage *in transitu* is resorted to. The consignment so completely passes the title to the consignee that he can sell to arrive, pledge or hypothecate by a transfer of the bill of lading; he can maintain replevin or trespass in regard to the goods. It will at once be seen that the question of agency for transportation is one entirely separate and distinct from that of the ownership; but admitting the premises and contention, and that the railway company was solely the agent of appellee, the agency ceased with delivery of the cars " upon the track in Denver."

The principal error relied upon was the refusal of the court to give the first, second, third, fourth and fifth instructions asked upon the part of defendant. The instruction given by the court was short, pointed and unmistakable, embracing all the law involved in the case, and fairly submitting to the jury the only questions of fact for their determination. The entire charge is the following :—

" Gentlemen of the Jury :—This is an action brought by George R. Park against The A. Westman Mercantile Company to recover the value of certain hay sold by the plaintiff to The A. Westman Mercantile Company.

" If you believe from the evidence that there was a contract between these parties for the sale of this hay, and that

the hay was delivered to The A. Westman Mercantile Company and was accepted by it, either actually or by virtue of any custom, if any has been shown regarding the dealings between The A. Westman Mercantile Company and The Union Pacific Railway Company; it will be your duty to find for the plaintiff.

" If you find under all the evidence that the hay in question was not delivered to the defendant, it will be your duty to find for the defendant.

" The burden of proof is upon the plaintiff to establish his case by a preponderance of the testimony ; that does not always mean the number of witnesses, but, after hearing all the testimony, must convince your minds that the greater weight is in favor of the proposition that plaintiff maintains.

" If you find from the evidence before you that there was a contract that, before the defendant accepted any hay from the plaintiff, it had a right to inspect the same and ascertain its quality, and you further find from the evidence that the defendant had no opportunity to make such inspection in this case under the manner in which hay was delivered, if you find it was delivered at all, your verdict should be for the defendant.

" The testimony is for your consideration, and it is your duty to take into consideration all the facts and circumstances surrounding the case in determining the matter."

The first, second and fourth instructions asked and refused were in regard to the delivery and acceptance of the hay, and were embraced in the instructions given by the court. The third was properly refused.   It sought to make defendant's liability depend upon proof of notice from the railway company to the defendant of the arrival of the cars, a matter with which appellant had nothing to do, and of no legal significance, if the fact of actual delivery and acceptance was established according to the general manner and custom in which the business between the parties was transacted.

The evidence in regard to the delivery and acceptance of the hay was somewhat contradictory.   They were questions

of fact peculiarly within the province of the jury to determine; were fairly submitted by the instruction of the court and found in favor of appellee. Such finding is conclusive upon this court.

The fifth instruction asked and refused was in regard to a supposed rescission or modification of the contract by a conversation between the parties on the 9th of June, two days before the hay in question was shipped. Mr. Ballard testified that after explaining to appellee that the market was full of hay, and stability of prices doubtful, said, "any further shipments of hay to us must be as to your own judgment." It is not shown that appellee made any response whatever. If any effect can be given to the conversation, it was not that appellee was to stop shipping or appellant receiving, but that a contingency might arise, and the condition of the market be such that there might in the future be a necessity of modifying the contract as to price. It is not shown that any such necessity arose. The most that could have been claimed for it would have been to allow appellee to use it upon the trial in reduction of damages. It was not a rescission, hence, the instruction asked, requiring the court to submit to the jury the question of rescission, was properly refused. There was no legal evidence to support the proposition.

It appears, *inter alia*, that appellant had about half a dozen cars of freight destroyed by the fire, including the two in controversy, and that it put in the two of appellee, after seeing him and getting consent, with the others in a claim against the railroad company; and that, while the claim was pending and undetermined, appellee went to the agent of the railroad company and and asked him in regard to *his claim*, presented by appellant. It is urged in argument that this was incompatible with his subsequent claim asserted against appellant. The consent of Park that appellant should present it as its own claim is not incompatible with his contention in this case. If he had asserted his ownership to the official, and forbidden payment to the other party, it might have had

some legal bearing, but the evidence does not go to that extent. The hay was not paid for; he wanted his money; payment was delayed; he went to ascertain what the probabilities were, and probably spoke of it as *his* claim. It was not an estoppel; no one acted upon it; it was not pleaded nor relied upon as an estoppel; it was not raised in court nor acted upon in any manner so that an exception was saved or an error assigned. The most that can be claimed for it was that it was a declaration at variance with the claim being adjudicated, and could only affect his credibility. It was certainly no more incompatible than the course of appellant, insisting it was not the owner after having filed a claim as the owner. The jury probably, very properly, set off one against the other.

It appears incidentally in the record that some proceeding was had by appellant against the railroad company in which testimony was taken. We are not informed what the proceeding was, nor what the result, but it is evident that appellant failed to hold the railway company liable. It is fairly inferable that the company escaped liability by showing a delivery of the freight to appellant, but as before said, this is only an inference from what briefly appears in the record, and may be incorrect.

The judgment must be affirmed.

*Affirmed.*